Connor M. Mannion, Esq.
**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey  07602-0800
201-489-3000
201-489-1536  Facsimile
*Attorneys for Plaintiff, American Neighborhood*
*Mortgage Acceptance Company, LLC.*

| | |
|---|---|
| AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC d/b/a ANNIEMAC HOME MORTGAGE,<br><br>Plaintiff,<br><br>v.<br><br>MONA LEE EDICK, DESPINA NOVAKIDOU, and STACEY LEMMAGE,<br><br>Defendant. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY CIVIL ACTION NO.<br><br><u>Civil Action</u><br><br>**COMPLAINT** |

Plaintiff, American Neighborhood Mortgage Acceptance Corporation LLC ("AnnieMac" or the "Company"), domiciled at 700 E Gate Dr, Suite 400, Township of Mt. Laurel, County of Burlington, State of New Jersey, complaining of Defendants Mona Lea Edick, Despina Novakidou, and Stacey Lemmage states as follows:

## INTRODUCTION

1. AnnieMac hired Edick as an Originating Regional Manager in February, 2024, paying her a signing bonus of $500,000.00 at that time. The bonus reflected AnnieMac's high expectations for Edick as a mortgage loan originator and

regional manager, and it was contingent upon Edick remaining employed for at least 36 months. Several months into Edick's employment, however, AnnieMac discovered evidence that Edick's "success" involved the use of fraudulent information to meet underwriting or other requirements to qualify for mortgage loans. An internal review revealed that Edick, with the assistance of Novakidou and Lemmage, had facilitated and concealed fraudulent documentation and misrepresentations to help borrowers in meeting loan underwriting requirements. As a result, AnnieMac terminated Edick for cause and demanded that she repay the $500,000.00 bonus. Edick refused to repay the bonus. AnnieMac is now forced to bring this action to recover the bonus, together with damages caused by Defendants' fraudulent actions, as well as other related relief.

## GENERAL ALLEGATIONS

2. Plaintiff AnnieMac is a Delaware limited liability company domiciled in Mt. Laurel Township, Burlington County, New Jersey. AnnieMac has two members. The first is an individual domiciled in New Jersey. The second is a limited liability company with a single member domiciled in Puerto Rico. Therefore, AnnieMac is deemed to be a citizen of Puerto Rico and New Jersey, only, for purposes of diversity jurisdiction

3. Defendant Mona Lea Edick ("Edick") is an individual who, at all relevant times, was employed by AnnieMac for purposes of managing the branch

located at 4210 Del Prado Blvd South, Suite 1,2,3, Cape Coral, Florida (the "**Florida Branch**"). Subsequently, Edick was also assigned to manage the branch located at 20980 Rogers Drive, Suite 400, Rogers, Minnesota (the "**Minnesota Branch**").

4. At all relevant times, Edick was and remains domiciled in the City of Cape Coral, County of Lee in the State of Florida.

5. At all relevant times, Edick was subject to a Sign-On Bonus Agreement ("**Bonus Agreement**") dated February 1, 2024, a copy of which is attached hereto as Exhibit A**,** among other agreements.

6. The Bonus Agreement provides, in pertinent part:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey (without regard to any conflicts of laws principles thereof that would give effect to the laws of another jurisdiction). Employee intends to and hereby confers jurisdiction upon the courts of the State of New Jersey and U.S. federal courts located within the State of Jersey to determine any dispute arising out of or related to this Agreement, including the enforcement and the breach hereof. Employee waives any objection to venue in such courts. [Exhibit A, Bonus Agreement, Sec. 3 (emphasis supplied).]

7. Defendant Despina Novakidou ("**Novakidou**") is an individual who, at all relevant times, was employed by AnnieMac as a Loan Partner and who is domiciled in the city of Cape Coral, County of Lee in the State of Florida.

8. Defendant Stacey Lemmage ("**Lemmage**") is an individual who, at all relevant times, was employed by AnnieMac as a Loan Processor.

9. At all relevant times Lemmage resided in Maple Grove, County of Hennepin in the State of Minnesota, where she is currently domiciled. Lemmage's duties included regularly assisting Edick with the origination of mortgage loans for borrowers located in Florida and Minnesota regarding properties also located in those states, and Lemmage regularly performed such duties.

10. At all relevant times, Defendants submitted information to AnnieMac relating to the closing of loans, including information submitted through AnnieMac's computerized loan origination system, which is located in New Jersey.

11. Venue is proper because the Federal District of New Jersey is where a substantial part of the events or omission giving rise to the claim occurred, and Edick's Bonus Agreement provides that venue is proper in said court.

12. This Court has subject matter jurisdiction because the parties are citizens of different states and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

### GENERAL ALLEGATIONS

13. AnnieMac is a national company in the business of originating residential mortgage loan products and providing services to borrowers, including mortgage financing and refinancing services.

14. On February 1, 2024, AnnieMac hired Edick as the Originating Regional Manager of AnnieMac's Florida Branch, and subsequently assigned her to manage the Minnesota Branch as well.

15. Concurrent with her hiring, Edick executed an Originating Regional Manager Agreement as well as the Bonus Agreement, the latter of which provided that Edick would receive a signing bonus (the "Bonus") of $500,000.00 payable in 10 installments of $50,000.00. Exhibit A, Bonus Agreement.

16. On February 1, 2024, AnnieMac hired Novakidou as a Loan Partner II.

17. On February 1, 2024, AnnieMac hired Lemmage as a Loan Processor.

18. AnnieMac has paid Edick each of the $50,000.00 installment payments for a total of $500,000.00.

19. The Bonus Agreement required Edick to repay the full amount of the bonus if her employment with AnnieMac terminated within 36 months of her start date. Exhibit A, Bonus Agreement, Sec. 2.

20. As an Originating Regional Manager, Edick's duties included the origination of mortgage loans and the supervision and management of other loan originators and staff at the Florida and Minnesota Branches, including but not limited to Novakidou and Lemmage.

21. In performing her duties, Edick was required to comply with all AnnieMac policies and applicable law.

22. The process of originating mortgage loans required Edick to work with prospective borrowers and referring third parties, such as real estate agents.

23. As a regional manager and mortgage loan originator, Edick was the primary point of contact for many borrowers and was responsible for the accuracy and completeness of loan applications and supporting documents received from borrowers.

24. Edick, Novakidou, and Lemmage were responsible for gathering information from prospective borrowers regarding, among other things, employment, income, assets, and debts, and submitting this information to AnnieMac's independent underwriting department to determine whether the borrower qualified for a mortgage loan.

25. Before submitting a loan application and supporting documentation to AnnieMac's underwriting department, Edick was responsible for evaluating each borrower's credibility and any supporting documentation for accuracy and veracity.

26. Edick's compensation was based, in part, on commissions from each mortgage loan that she successfully closed.

### *The Fraudulent Acts*

27. Approximately eight months after Edick started working for AnnieMac, the company became concerned about possible fraud in the loan applications Edick originated or otherwise supervised.

28. AnnieMac reviewed a sample of loan files and related materials regarding loan applications originated by Edick, with the assistance of Novakidou and/or Lemmage, and discovered significant evidence of fraud, including but not limited to the following (the "Fraudulent Acts"):

   a. Edick knowingly submitted loan applications with false information regarding borrower employment and income;

   b. Edick coached or otherwise instructed potential borrowers on how to revise prior tax returns to misrepresent their income;

   c. Edick knowingly received and submitted to AnnieMac's underwriting department false documentation regarding borrower income, assets, and employment;

   d. Edick coached or otherwise assisted potential borrowers in misrepresenting their income, assets, and employment;

   e. Edick coached or otherwise guided potential borrowers to misrepresent their employment status as being employed by bogus or dubious family businesses rather than report their self-employment; and

   f. Edick, either personally or by instructing other employees, sought to delete and conceal accurate information regarding loan applications that she originated while employed by AnnieMac.

29. AnnieMac discovered that Edick frequently utilized the same loan processors, real estate agent, and accounting firms to assist in committing the Fraudulent Acts.

30. AnnieMac also discovered that Novakidou and Lemmage acted in concert with Edick to perpetrate the Fraudulent Acts.

### *Audit of Specific Loan Files*

31. In the case of one loan application, AnnieMac discovered that the borrower's income, as reported by Edick, did not match the business income shown on the borrower's tax transcripts.

32. Regarding another loan application, Edick's notes stated that the borrower would be eligible for a $370,000.00 mortgage loan "if he can amend his taxes for 2023 and get the W-2 income of $28,800" despite the fact that the borrower had not reported those wages in the tax year at issue. In addition, Edick sought to reclassify the borrower's automobile loan as a business expense in order to reduce the borrower's debt-to-income ratio.

33. Regarding a different loan application, Edick inflated the borrower's income, and the income reported on the application was not supported by the borrower's bank statements. In addition, the amount of time the borrower was self-employed was misrepresented.

34.    Review of yet a different loan application revealed that Edick concealed or failed to disclose that a borrower had created bogus rent revenues to support a mortgage loan for a multi-family building. Further, Edick substantially inflated the borrower's income, claiming that the borrower "just got promotion to manager," even though prevailing wages for the borrower's position were substantially less than the reported amount and inconsistent with the borrower's previous wages.

35.    Regarding another loan application, Edick, with assistance from Lemmage and Novakidou, submitted false income documentation from the borrower, including multiple letters from an accounting firm regarding the financial status of a family business where the accounting firm reported that it had only provided a single letter. Edick allowed the borrower to submit false documentation attempting to show self-employment of at least five years to avoid having to require documentation of income for additional years. Moreover, Novakidou provided false information to AnnieMac's Executive Vice President of Operations when questioned about the transaction.

36.    In another loan file, AnnieMac found that the borrower's reported income was not supported by sufficient documentation and the income was inflated for purposes of qualifying for a mortgage loan.

37.    In still yet a further loan file, Edick coached the borrower to submit amended tax returns increasing the borrower's income approximately six-fold from

the income reported when the returns were originally filed. Edick also submitted a suspicious letter from an accounting firm in support of the inflated income information. Lemmage also assisted in coaching the borrower through the process of submitting amended tax returns.

38. In a different loan file, AnnieMac found that initial income verification documents from the borrower had been excluded from the loan application before it was submitted to underwriting. The excluded documentation included paychecks and tax returns showing a lower income than was reported on the mortgage application. Instead of this documentation, Edick created a false work verification of income ("WVOE") that failed to disclose the borrower's status as a contract employee, which would have adversely affected the borrower's chances of being approved for the mortgage loan. Novakidou and Lemmage assisted Edick in securing the false WVOE from the borrower's employer.

39. Regarding a different loan application, Edick submitted the application to an automated underwriting system ("AUS") at least five times to determine what income would be required for the borrower to qualify. Based on the AUS results, Edick submitted a false Verification of Employment that misrepresented the borrower's employment history and income.

40. In yet another loan file, Edick attempted to use a falsified WVOE to inflate the borrower's length of employment and income. Edick attempted to delete

documents from the loan file that were inconsistent with the falsified documentation, but she failed to do so. At that point, she sent an email to her processors telling them to "just push" the application through underwriting.

41. In another loan file, Edick noted that the borrower had recently switched jobs and listed the borrower's income and work history. However, Edick ultimately submitted a suspicious WVOE that claimed the borrower had obtained a position at a different company at higher rate of pay.

### *Freddie Mac's Notice of Fraud Investigation*

42. On November 14, 2024, AnnieMac received a notice from the Federal Home Loan Mortgage Corporation ("FHLMC" of "Freddie Mac") regarding mortgage loans it had purchased from AnnieMac.

43. Freddie Mac purchases closed mortgage loans from AnnieMac under an agreement that requires AnnieMac to repurchase the loans if the loan file includes evidence of fraud.

44. Freddie Mac's written notice identified at least three loans originated by Edick that Freddie Mac is investigating for fraud.

### *Defendants' Termination*

45. The Fraudulent Acts created significant liability for AnnieMac, because, among other things, AnnieMac is required to repurchase any loans it has

sold to investors where the loan was approved based on fraudulent information or documentation.

46. In addition to repurchasing loans that were based on fraudulent documentation, AnnieMac's business reputation has been harmed.

47. To the extent that AnnieMac has retained loans that were originated based on Defendants' fraud and misconduct, AnnieMac has suffered damages to the extent that those cannot be sold at prevailing market rates.

48. After learning of Defendants' fraudulent and otherwise unlawful conduct, on November 14, 2024, AnnieMac terminated Edick for cause.

49. On November 18, 2024, AnnieMac terminated Novakidou and Lemmage for failure to follow company policy and industry standards.

50. Upon her termination, AnnieMac demanded that Edick repay the $500,000.00 bonus, because she had not worked for 36 months as required under the Bonus Agreement.

51. Edick failed and refused to repay the Bonus as required by the Bonus Agreement.

## COUNT I
## BREACH OF SIGN-ON BONUS AGREEMENT
### (AS TO DEFENDANT EDICK)

52. AnnieMac incorporates the allegations set forth in paragraphs 2 through 50 as if fully stated below.

53. The Bonus Agreement provides that AnnieMac shall pay Edick $500,000.00 (the "Bonus") in the form of 10 installments in the amount of $50,000. Exhibit A, Bonus Agreement, Sec. 2.

54. The Bonus Agreement further provides that the Bonus is an "unvested wage advance." Exhibit A, Bonus Agreement, Sec. 2.

55. The Bonus Agreement further states, in pertinent part:

> Employee will earn the advance in its entirety by remaining employed with Company for thirty-six (36) months following the Start Date. **The Parties further agree that no portion of the advance shall be earned if Employee does not remain employed with Company for the full thirty-six (36) months.** Stated differently, if Employee does not remain employed with Company for thirty-six (36) months, Company may require Employee to pay back the bonus in full pursuant to paragraph 3, below. Time of employment less than thirty-six (36) months, including partial months of employment, does not reduce the repayment obligation under this Agreement. [Exhibit A, Bonus Agreement, Sec. 2 (emphasis in original).]

56. Pursuant to the terms of the Bonus Agreement, if Edick failed to remain in AnnieMac's employ for at least 36 months, she would be required to repay the Bonus to the company. Specifically, the Bonus Agreement provides, in pertinent part:

> If Employee separates from employment with Company, regardless of the reason, whether voluntary or involuntary, prior to thirty-six (36) months after the Start Date, then Employee agrees to repay the entire unvested wage

advance portions of the Bonus within ten (10) days of the separation date. Employee further agrees that any outstanding balance on such repayment obligation is delinquent and immediately collectable following the tenth (10th) day after the separation date. [Exhibit A, Sign-On Bonus, Sec. 2(a).]

57. Edick separated from AnnieMac on November 14, 2024, when AnnieMac terminated her for cause.

58. Edick separated from AnnieMac less than 36 months from her start date of February 1, 2024.

59. Because Edick separated from AnnieMac prior to the expiration of the required 36-month period of employment, she is required to repay the amount of the Bonus, which is $500,000.00.

60. AnnieMac demanded that Edick repay the Bonus.

61. Edick has failed and refused to repay the Bonus as required under the Bonus Agreement.

62. Edick's failure and refusal to repay the Bonus constitute a breach of her obligations under the Bonus Agreement.

63. AnnieMac has been damaged by Edick's breach of the Bonus Agreement.

64. WHEREFORE, AnnieMac prays for relief as set forth below.

## COUNT II
## BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY
### (AS TO DEFENDANT EDICK)

65. AnnieMac incorporates the allegations set forth in paragraphs 2 through 50 as if fully stated below.

66. Edick was an originating regional manager and mortgage loan originator for AnnieMac and as such owed fiduciary duties to AnnieMac, as well as a duty of loyalty.

67. In committing the Fraudulent Acts, Edick did not exercise the care required of a regional manager or mortgage loan originator, in that she used her position of trust and confidence to further her own interest, and in doing so caused injury to AnnieMac.

68. As a result of Edick's wrongful conduct, AnnieMac has suffered and continues to suffer economic loss and other general and specific damages, including, but not limited to, damage to business reputation, lost profits, and lost revenue, in an amount to be determined according to proof at the time of trial.

69. Edick committed the wrongful acts maliciously, oppressively, and with intent to defraud and permanently deprive AnnieMac of its economic benefits.

70. AnnieMac is entitled to punitive and exemplary damages in an amount to be ascertained according to proof at the time of trial, which is appropriate to punish and set an example.

71. WHEREFORE, AnnieMac prays for relief as set forth below.

## COUNT III
## FRAUD
### (AS TO ALL DEFENDANTS )

72. AnnieMac incorporates the allegations set forth in paragraphs 2 through 50 as if fully stated below.

73. Defendants' Fraudulent Acts, as more specifically pled above, constitute a series of material representations of a presently existing or past fact.

74. Further, Edick's and Defendants' repeated failure to disclose to AnnieMac the falsity of information and documentation submitted by borrowers, realtors, or accountants constitutes misrepresentation by omission, and Edick owed a fiduciary duty to AnnieMac to make such disclosures.

75. Defendants made the material representations and omissions with knowledge of their falsity.

76. Defendants intended that AnnieMac rely on their material misrepresentations and omissions.

77. AnnieMac relied on Defendants' misrepresentations to its detriment by, among other things, funding the fraudulent mortgage loans originated by Defendants, paying Edick commissions on each mortgage, and – in some cases – selling the mortgage loans to third parties.

78. At the time of Defendants' Fraudulent Acts, AnnieMac was ignorant of the actions being undertaken by Defendants and believed that Defendants were acting in the best interests of AnnieMac, and relied upon Defendants' Fraudulent Acts when continuing to employ and compensate Defendants.

79. AnnieMac did not discover Defendants' Fraudulent Acts, which they had fraudulently concealed, until after reviewing a sample of the loan applications and related materials submitted by Defendants for underwriting and funding.

80. AnnieMac has been damaged by the company's reliance on Defendants' misrepresentations and omissions in an amount that exceeds $75,000.00.

81. WHEREFORE, AnnieMac prays for relief as set forth below.

## COUNT IV
## CONSPIRACY
### (AS TO ALL DEFENDANTS)

82. AnnieMac incorporates the allegations set forth in paragraphs 2 through 50 as if fully stated below.

83. Edick, Novakidou and Lemmage's conduct, as more specifically pled above, constitute a civil conspiracy.

84. Each Defendant acted in concert to commit an unlawful act, or to commit a lawful act by unlawful means as follows:

    a.    Defendants committed tortious acts, including but not limited to fraud, in concert with each other, pursuant to a common design;

    b.    Each Defendant knew that each other's conduct constituted fraud;

    c.    Each Defendant knew that their individual conduct constituted a breach of their respective duties to AnnieMac;

    d.    Each Defendant provided substantial assistance and encouragement to the others to commit said fraud and breach of duties; and

    e.    Each Defendant's conduct, separately considered, constituted an overt act and constitutes a breach of their respective duties to AnnieMac.

85. AnnieMac suffered harm as the result of Defendants' overt actions constituting illegal fraud.

86. Edick, Novakidou and Lemmage performed the Fraudulent Acts in concert with each other pursuant to a common design.

87. In addition, Defendants knew that their actions were in furtherance of fraud as well as Edick's breach of her fiduciary duty and duty of loyalty to AnnieMac.

88. Novakidou and Lemmage each gave substantial assistance to Edick in perpetrating the Fraudulent Acts and Edick's breach of her fiduciary duties and duty of loyalty.

89. Edick, Novakidou and Lemmage each knew their respective conduct, separately considered, constituted fraud and contributed to the breach of Edick's fiduciary duties and her duty of loyalty to AnnieMac.

90. Edick, Novakidou and Lemmage are jointly and severally liable for the damages AnnieMac suffered as a result of Edick's tortious conduct.

91. AnnieMac is entitled to punitive and exemplary damages in an amount to be ascertained according to proof at the time of trial, which is appropriate to punish and set an example.

92. WHEREFORE, AnnieMac prays for relief as set forth below.

# PRAYER FOR RELIEF

WHEREFORE, AnnieMac prays for relief as follows:

A.   For damages in the amount of $500,000.00, representing the amount of the Bonus;

B.   For additional compensatory and general damages according to proof;

C.   For special damages according to proof;

D.   For consequential damages according to proof;

E.   For prejudgment interest at the maximum legal rate;

F.   For punitive and exemplary damages according to proof;

G.   For attorney fees pursuant to the Bonus Agreement;

H.   For costs of the proceedings herein; and

I.   For all other relief that this Court finds just and proper.

Dated: February 28, 2025         Respectfully Submitted,

**Cole Schotz**
Court Plaza North
25 Main Street
Hackensack, NJ 07601
P: 208-525-6274
Email: cmannion@coleschotz.com

*/s Connor M. Mannion.*
Connor M. Mannion
NJ Atty ID #334482021
*Attorneys for American Neighborhood Mortgage Acceptance Company, LLC*