**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY, LLC b/b/a ANNIEMAC HOME MORTGAGE, | Civil Action No. 1:25-cv-01563-RMB-SAK |
| *Plaintiff,* | |
| v. | **ANSWER TO SECOND AMENDED COMPLAINT, COUNTERCLAIM AND JURY DEMAND** |
| MONA LEE EDICK, | |
| *Defendant.* | |

Defendant, Mona Lee Edick ("Defendant"), by and through her attorneys, The Chilla Business Counsel, LLC, hereby submit this Answer to the Second Amended Complaint of Plaintiff, American Neighborhood Mortgage Acceptance Company, LLC b/b/a Anniemac Home Mortgage, ("Plaintiff" or "AnnieMac"), assert affirmative defenses, and Counterclaim as follows:

## AS TO INTRODUCTION

1.      Defendant denies allegations in Paragraph 1 as they are not presented as facts relevant to this matter.

## AS TO PARTIES, JURISDICTION, AND VENUE

2.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Second Amended Complaint, and leave Plaintiff to its proofs. Paragraph 2 calls for a legal conclusion as to diversity of citizenship and the Court's jurisdiction to which no response is required.

3. Defendant admits the allegation in Paragraph 3.

4. The document referenced in Paragraph 4 of the Second Amended Complaint speaks for itself.

5. The document referenced in Paragraph 5 of the Second Amended Complaint speaks for itself. The balance of this paragraph calls for a legal conclusion to which no response is required.

6. Paragraph 6 calls for a legal conclusion to which no response is required.

7. Paragraph 7 calls for a legal conclusion to which no response is required.

## AS TO GENERAL ALLEGATIONS

8. Defendant admits to the allegations contained in Paragraph 8 of the Second Amended Complaint.

9. Defendant admits that while employed by AnnieMac she managed the "Florida Branch" and a branch located in Minnesota. She denies the remaining allegations set forth in Paragraph 9 and leaves Plaintiff to its proofs.

10. The document referenced in Paragraph 10 of the Second Amended Complaint speaks for itself.

11. The document referenced in Paragraph 11 of the Second Amended Complaint speaks for itself and calls for a legal conclusion to which no response is required.

12. Defendant admits the allegation in Paragraph 12.

13. Defendant denies the allegations in Paragraph 13 as the terms of the Sign-On Bonus Agreement ("Bonus Agreement") speaks for themselves, Plaintiff's allegations seek a legal conclusion, and Defendant leaves Plaintiff to its proofs.

14.     Defendant denies the allegations in Paragraph 14 as the terms of the Bonus Agreement speaks for themselves, Plaintiff's allegations seek a legal conclusion, and Defendant leaves Plaintiff to its proofs.

15.     Defendant admits only that she was terminated by Plaintiff. The remaining allegations in Paragraph 15 are denied.

16.     Defendant denies the allegations in Paragraph 16, and Defendant leaves Plaintiff to its proofs.

## COUNT 1 – BREACH OF SIGN-ON BONUS AGREEMENT

17.     Defendants reassert and reallege their responses to Paragraphs 1 through 16 as if fully set forth herein.

18.     Paragraph 18 calls for a legal conclusion to which no response is required.

19.     Defendant admits the allegation in Paragraph 19.

20.     Defendant denies the allegations in Paragraph 20 as the terms of the Bonus Agreement speaks for themselves, Plaintiff's allegations seek a legal conclusion, and Defendant leaves Plaintiff to its proofs.

21.     Defendant admits the allegation in Paragraph 21.

22.     Defendant admits the allegation in Paragraph 22.

23.     Defendant denies the allegation in Paragraph 23.

24.     Defendant denies the allegation in Paragraph 24.

25.     Defendant denies the allegation in Paragraph 25.

26.     Defendant denies the allegations in Paragraph 26 as the terms of the Bonus Agreement speaks for themselves, Plaintiff's allegations seek a legal conclusion, and Defendant leaves Plaintiff to its proofs.

27.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Second Amended Complaint, and leave Plaintiff to its proofs.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to set forth a cause of action upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff has filed its complaints in bad faith.

### THIRD AFFIRMATIVE DEFENSE

At all times relevant to this matter, Defendant's actions were reasonable and proper.

### FOURTH AFFIRMATIVE DEFENSE

At all times relevant to this matter, Defendant acted in good faith and complied with all applicable laws.

### FIFTH AFFIRMATIVE DEFENSE

Defendant denies that it is guilty of any conduct that would merit an award of damages.

### SIXTH AFFIRMATIVE DEFENSE

The Second Amended Complaint is barred, in whole or in part, by the doctrine of laches, waiver and judicial estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

The Second Amended Complaint is barred by the doctrine of unclean hands.

### EIGHTH AFFIRMATIVE DEFENSE

The Bonus Agreement lacks valid consideration.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because it breached the Bonus Agreement and constructively discharged Defendant, thereby preventing Defendant from earning the bonus through no fault of her own.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff breached the implied covenant of good faith and fair dealing.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff breached the Arbitration Contract.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff has been unjustly enriched by Defendant's services and would be further enriched if allowed to retain that value while also recovering the bonus payment.

### THIRTEENTH AFFIRMATIVE DEFENSE

The Bonus Agreement is against New Jersey public policy.

### FOURTEENTH AFFIRMATIVE DEFENSE

Defendant provided services to Plaintiff that translate to above the amount of the sign-on bonus and therefore the sign-on bonus has been fully paid and satisfied through Defendant's services to Plaintiff, the value of which exceeds the sign-on bonus amount of $500,000.00.

### FIFTEENTH AFFIRMATIVE DEFENSE

Defendant is entitled to recoup the value of services provided to Plaintiff which exceeds the sign-on bonus amount of $500,000.00, thereby satisfying any obligation to repay the sign-on bonus.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because awarding damages to Plaintiff in the amount of $500,000.00 would result in Plaintiff's unjust enrichment and double recovery, as Plaintiff has already received the benefit of services rendered by Defendant that exceeds the value of the sign-on bonus amount of $500,000.00.

## SEVENTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff is permitted to retain the positive balance in Defendant's profit and loss report, these funds are an offset to any funds Defendant is to pay to refund the sign-on bonus.

## EIGHTEENTH AFFIRMATIVE DEFENSE

To the extent Defendant is liable to Plaintiff for repayment of the sign-on bonus, Defendant is entitled to an offset of any taxes she paid upon receipt of the sign-on bonus.

## NINETEENTH AFFIRMATIVE DEFENSE

To the extent Defendant is liable to Plaintiff for repayment of the sign-on bonus, Defendant is entitled to an offset of any amount she paid to establish office space Plaintiff used during Defendant's employment with Plaintiff and which it may still be utilizing as AnnieMac enjoyed a benefit from having, and possibly continuing to have, the office space and furnishings these funds provided.

## TWENTIETH AFFIRMATIVE DEFENSE

To the extent Defendant is liable to Plaintiff for repayment of the sign-on bonus, Defendant is entitled to an offset of any amount she paid to other individuals as an incentive in order for them to join Plaintiff as an employee as AnnieMac enjoyed a benefit from these individuals being employed by AnnieMac.

## COUNTERCLAIM

Counterclaimant Mona Lee Edick ("Edick"), asserts the following counterclaim against Counterclaim Defendant American Neighborhood Mortgage Acceptance Company, LLC b/b/a Anniemac Home Mortgage, ("AnnieMac"), and hereby states the following:

### PARTIES

1. Edick was an Originating Regional Manager for AnnieMac who resides at 3320 SW 3rd Lane, Cape Coral, Florida.

2. AnnieMac is a Delaware limited liability company, domiciled at 700 E. Gate Dr., Suite 400, Township of Mt Laurel, New Jersey.

3. AnnieMac has two members. The first member is an individual who was domiciled in New Jersey. The second is a limited liability company with a single member who was domiciled in Puerto Rico.

4. As a result of the domicile of the limited liability members, AnnieMac is domiciled in New Jersey and Puerto Rico.

### VENUE AND JURISDICTION

5. This Court has subject matter jurisdiction over this counterclaim based on diversity of citizenship under 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This counterclaim arises from the same transaction or occurrence as Counterclaim Defendant's claims and is therefore compulsory under Federal Rule of Civil Procedure 13(a).

### FACTS COMMON TO ALL COUNTS

7. On February 1, 2024, AnnieMac hired Edick as an Originating Regional Manager for AnnieMac's Florida and Minnesota branches.

8.     At the time of commencing employment, Edick signed an arbitration agreement providing, in part, that any claim arising from her employment was subject to arbitration and was not to be submitted to any court.

9.     Edick's duties for AnnieMac included the origination of mortgage loans and to supervise and manage other loan originators.

10.    Edick executed a sign-on bonus agreement with AnnieMac and received $500,000 that was paid to her in increments over the course of five months.

11.    Plaintiff used the $500,000 sign-on bonus for legitimate business reasons including establishing Florida and Minnesota offices for Anniemac and providing funds to personnel she worked with at a prior employer in order to have them commence employment with AnnieMac.

12.    As a producing branch manager, Edick had a profit and loss report which reflected funds due to Edick on account of business and commissions she generated.

13.    Edick had a certain level of discretion with the profit and loss balance to pay her team members, herself or invest the funds into her operations.

14.    Ultimately, the amount reflected in the profit and loss report was funds owed by or due to her personally.

15.    At the beginning of Edick's employment, her profit and loss report showed a negative balance of $500,000.

16.    The initial negative $500,000 was on account of her anticipating to receive $500,000 from her signing bonus.

17.    Effectively, the sign-on bonus was an advance against commissions Edick was to receive through business she developed and commissions she earned from that business.

18. Edick was therefore required to bring in sufficient business to offset the negative $500,000 and generate profits as reflected in her profit and loss report.

19. Over the course of Edick's employment, based upon the work she generated, her profit and loss report improved from negative $500,000 to a positive profit realization.

20. In or about September 2024 Edick was able to offset the negative $500,000 balance associated with the sign-on bonus to her business profits and losses, into a positive balance.

21. On November 18, 2024, AnnieMac terminated Edick. At the time, no details were provided as to the basis for the termination.

22. At the time of Edick's termination, AnnieMac's profit and loss report reflected at least $400,000 in profit.

23. This represents at least a $900,000 improvement in the profit and loss report during Edick's employment.

24. When Edick ceased working for AnnieMac, it owed her the positive funds reflected in her profit and loss report as there were commissions she had earned on account of her business development for AnnieMac.

25. AnnieMac has failed and refused to pay Edick at least $900,000 in earned commissions.

26. As reflected in the positive profit and loss report, at the time of termination, Edick had generated substantial profits for AnnieMac that exceeded the amount of the sign-on bonus.

27. Subsequent to Edick's termination, loans that she had originated closed.

28. Since Edick originated the loans, and even though they closed after she ceased to be employed by AnnieMac, she should receive commissions for the closing.

29.     AnnieMac has failed to provide any commission payments to Edick for the loans that closed after her termination.

30.     On January 23, 2025, Counterclaim Defendant AnnieMac filed a complaint against Counterclaimant in the Middle District of Florida Fort Myers Division alleging four counts: (1) breach of sign-on bonus agreement; (2) fraud; (3) breach of fiduciary duty and duty of loyalty; and (4) concert of action.

31.     Counterclaim Defendant AnnieMac was under no legal obligation to file an action in the Middle District of Florida Court, as Florida Rules of Civil Procedure does not impose a mandatory joinder requirement for claims.

32.     The Florida action was dismissed, *sua sponte*, due to the court concluding AnnieMac had filed a shotgun pleading.

33.      On February 28, 2025, Counterclaim Defendant AnnieMac filed another complaint against Counterclaimant, this time in the New Jersey District Court alleging similar causes of action: (1) breach of sign-on bonus agreement; (2) breach of fiduciary duty and duty of loyalty; (3) fraud; and (4) conspiracy.

34.     Edick denies all allegations contained in Counterclaim Defendant AnnieMac's Complaints.

35.     On May 14, 2025, Counterclaimant moved to have the New Jersey Complaint dismissed for Counterclaim Defendant's failure to plead the fraud claim with specificity and as a result the conspiracy claim could not survive. Counterclaimant also sought to have the fraud claim dismissed as it was scandalous and tarnished Counterclaimant's professional reputation.

36.     At the conclusion of a court conference, the court dismissed the Complaint and granted Counterclaim Defendant's leave to amend its Complaint to address the issues raised in the Counterclaimant's motion to dismiss.

37.     On June 27, 2025, AnnieMac filed an Amended Complaint alleging the same four counts.

38.     On July 15, 2025, Counterclaim Defendant again sought to have the Amended Complaint dismissed, this time because at the commencement of her employment on February 1, 2024, Edick had signed an Arbitration Agreement providing, *inter alia*, that any claims arising from her employment were subject to arbitration and was not to be submitted to any court. See Exhibit A.

39.     Pursuant to the arbitration agreement, AnnieMac's claims of fraud and conspiracy should have never been filed in New Jersey District Court or Florida court; rather, they should have been submitted to private arbitration.

40.     On August 13, 2025, this Court administratively terminated the matter and ordered that the parties arbitrate counts (2) breach of fiduciary duty and duty of loyalty, (3) fraud, and (4) conspiracy of the First Amended Complaint in accordance with the parties' arbitration agreement and referred them to arbitration.

41.     This Court further ordered that Count One, the breach of sign-on bonus agreement claim, be stayed pending resolution of the arbitration.

42.     Thereafter, the parties selected an arbitrator to proceed with arbitration for counts Two through Four.

43.     On February 27, 2026, Counterclaim Defendant requested this Court administratively reopen the case to pursue and litigate Count One.

44.     Counterclaimant opposed Counterclaim Defendant's request to reopen the case on the grounds that the parties should adhere to the Court's August 13, 2025, Order as the claims in Count One of the Amended Complaint are intertwined with the arbitrable Counts.

45.     On March 24, 2026, this Court directed Counterclaim Defendant to file a Second Amended Complaint.

46.     As the drafter of the agreement and Edick's employer, Counterclaim Defendant AnnieMac was aware of the arbitration agreement. Therefore, by filing a claim in Florida Federal Court and twice in New Jersey Federal Court, it willfully and knowingly breached the Parties' Arbitration agreement.

## COUNT ONE

## BREACH OF ARBITRATION AGREEMENT

47.     Counterclaimant hereby incorporates and restates paragraphs 1 through 46 as if fully set forth herein.

48.     On February 1, 2024, the Parties entered into an Arbitration Agreement.

49.     The Arbitration Agreement required that any disputes arising out of or relating to the Counterclaimant's application for employment or employment be resolved exclusively through private arbitration.

50.     The Arbitration Agreement was valid, binding, and enforceable under law.

51.     Despite the binding arbitration requirement, on January 23, 2025, Counterclaim Defendant knowingly initiated civil action against Counterclaimant in the Middle District of Florida Fort Myers Division.

52.     The Florida District case was dismissed *sua sponte*.

53.    On February 28, 2025, Defendant filed in the New Jersey District Court a Complaint virtually identical to the case dismissed from the Middle District of Florida Court.

54.    Both of the complaints, the one filed in Florida and the one filed in New Jersey, included four claims: (1) breach of sign-on bonus agreement; (2) breach of fiduciary duty and duty of loyalty; (3) fraud; and (4) conspiracy.

55.    After an Amended Complaint, with the same counts was filed in the District Court of New Jersey, this Court concluded that the claims that are subject to the Arbitration Agreement were improperly brought in a judicial forum and were therefore dismissed and submitted to arbitration.

56.    Arbitration is a private procedure and typically includes confidentiality. By AnnieMac filing claims in the court system, which has publicly accessible documents, it breached the private and confidential nature of any dispute between the parties.

57.    Counterclaim Defendant filed multiple complaints in various courts knowingly breaching the parties' Arbitration Agreement.

58.    Counterclaim Defendant's purpose in filing the complaint in both courts was to publicly disclose Counterclaimant's identity; expose private allegations to the public record; and cause embarrassment, reputational harm, and intimidation.

59.    Filing claims in the public forum violated the parties' Arbitration Agreement providing for a private and confidential dispute resolution, which caused Edick damages.

60.    As a direct and proximate result of Counterclaim Defendant's breach of contract, Counterclaimant has been forced to divert time and resources from her professional activities to defend against AnnieMac's abusive lawsuits.

61.     As a direct and proximate result of Counterclaim Defendant's breach of contract, Counterclaimant has suffered economic damages including but not limited to humiliation, emotional distress, harm to her professional reputation and career, legal expenses and other consequential losses.

**WHEREFORE**, Counterclaimant, Mona Lea Edick, respectfully requests that this Court enter judgment against American Neighborhood Mortgage Acceptance Company LLC, d/b/a Anniemac Home Mortgage and award her:

i.   Compensatory damages;

ii.  Punitive damages;

iii. Attorneys' fees and cost; and

iv.  Other such relief as the Court deems appropriate.

## <u>COUNT TWO</u>

### <u>MALICIOUS USE OF PROCESS</u>

62.     Counterclaimant hereby incorporates and restates paragraphs 1 through 46 as if fully set forth herein.

63.     On February 1, 2024, the parties entered into a valid, enforceable, and binding Arbitration Agreement.

64.     The Arbitration Agreement required that any disputes arising out of or relating to the Counterclaimant's application for employment or employment be resolved exclusively through private arbitration.

65.     Despite the binding arbitration requirement, on January 23, 2025, Counterclaim Defendant knowingly initiated civil action against Counterclaimant in the Middle District of Florida Fort Myers Division.

66.    Counterclaim Defendant was under no legal obligation to file an action in the Middle District of Florida Court, as Florida Rules of Civil Procedure does not impose a mandatory joinder requirement for claims.

67.    On February 28, 2025, Counterclaim Defendant filed in the New Jersey District Court a complaint virtually identical to the case dismissed from the Florida court.

68.    The court action filed by Counterclaim Defendant included four claims: (1) breach of sign-on bonus agreement; (2) breach of fiduciary duty and duty of loyalty; (3) fraud; and (4) conspiracy.

69.    Counterclaim Defendant, as the employer, knew or should have known that the Arbitration Agreement deprived the court of jurisdiction over the disputed claims and that arbitration was the exclusive forum for resolution.

70.    Only after Edick raised the issue of the claim needing to be submitted to arbitration pursuant to the Arbitration Agreement did Counterclaim Defendant confirm with the Court that the Parties had a valid Arbitration Agreement.

71.    Counterclaim Defendant's purpose in filing its Complaint in court was to publicly disclose Counterclaimant's identity; expose private allegations to the public record; and cause embarrassment, reputational harm, and intimidation.

72.    Counterclaim Defendant's improper use of the judicial process constitutes a perversion and malicious use of process.

73.    Counterclaim Defendant engaged in malicious use of process by using the Court system for its ulterior, malicious motive.

74.    AnnieMac therefore filed its lawsuits motivated by malice against Edick.

75.     The Counts which were subject to the Arbitration Agreement were terminated by the Court and referred to arbitration.

76.     Counterclaimant Defendant has reopened the instant litigation as it has represented that it does not seek to prosecute the claims subject to arbitration.

77.     Therefore, the claims subject to arbitration have terminated favorably for Counterclaimant.

78.     Counterclaimant Edick has suffered special grievance in the form or reputational damage by Counterclaim Defendant placing in a public filing claims that by way of the Arbitration Agreement AnnieMac required be executed as a term and condition of Edick's employment were exclusively subject to private arbitration.

79.     The special grievances including but are not limited to humiliation, emotional distress, harm to her professional reputation and career, legal expenses and other consequential losses.

80.     Counterclaim Defendant's conduct was willful, malicious, and in reckless disregard of Counterclaimant's rights to warrant the imposition of punitive damages.

**WHEREFORE**, Counterclaimant, Mona Lea Edick, respectfully requests that this Court enter judgment against American Neighborhood Mortgage Acceptance Company LLC, d/b/a Anniemac Home Mortgage and award her:

i.   Compensatory damages;

ii.  Punitive damages;

iii. Attorneys' fees and cost; and

iv.  Other such relief as the Court deems appropriate.

## COUNT THREE

## UNJUST ENRICHMENT

81.     Counterclaimant hereby incorporates and restates paragraphs 1 through 46 as if fully set forth herein.

82.     Counterclaimant used the $500,000 sign-on bonus for business expenses and to establish Florida and Minnesota offices which benefited Counterclaim Defendant's business.

83.     Counterclaimant generated profits that converted a negative $500,000 profit and loss report into at least a positive $400,000 profit and loss report, representing a $900,000 improvement.

84.     Counterclaimant originated loans that closed after she ceased to be employed by Counterclaim Defendant.

85.     Counterclaim Defendant did not pay Counterclaimant commission from the loans she originated, and which closed after she ceased working for the company.

86.     Counterclaimant conferred substantial benefits upon Counterclaim Defendant by performing services that that earned commissions and generated revenue for Counterclaim Defendant.

87.     Counterclaim Defendant knowingly retained the benefits conferred by Counterclaimant, including the revenue and business operations developed by Counterclaimant.

88.     It is unjust for Counterclaim Defendant to retain these benefits while also demanding repayment of the $500,000 sign-on bonus.

89.     It is unjust for Counterclaim Defendant to retain the benefits without paying for them, which amounts to at least $900,000 for loans Edick closed while working with AnnieMac and additional sums for loans Edick originated and closed after she ceased to work for AnnieMac.

90.     It is unjust for Counterclaim Defendant to retain these benefits while refusing to pay earned commissions.

91.     As a result, Counterclaim Defendant has been unjustly enriched in an amount no less than $900,000.

WHEREFORE, Counterclaimant, Mona Lea Edick, respectfully requests that this Court enter judgment against American Neighborhood Mortgage Acceptance Company LLC, d/b/a Anniemac Home Mortgage and award her:

i.   Compensatory damages;

ii.  Punitive damages;

iii. Other such relief as the Court deems appropriate.

## COUNT FOUR

### VIOLATION OF NEW JERSEY WAGE PAYMENT LAW

92.     Counterclaimant hereby incorporates and restates paragraphs 1 through 46 as if fully set forth herein.

93.     Counterclaimant was employed by Counterclaim Defendant as a Loan Originator.

94.     Through Counterclaimant's efforts in originating mortgage loans and business development, Counterclaimant generated a substantial revenue and profits for Counterclaim Defendant.

95.     Counterclaimant was allocated funds as a result of closing mortgages.

96.    The funds were allocated to a profit and loss account that Counterclaimant controlled.

97.    The profit and loss funds were to be allocated for business purposes, which included paying Counterclaimant commissions based upon her closing of mortgages.

98.    As a direct result of Counterclaimant's work, there was a $900,000 in profits, as reflected in the profit and loss report, which constituted commissions earned by Counterclaimant.

99.    Counterclaimant also originated loans, which closed after she ceased to be employed by Counterclaim Defendant.

100.    The commissions that would have been paid to Counterclaimant upon closing had she remained with the Counterclaim Defendant is owed to Counterclaimant

101.    Commissions constitute wages under the New Jersey Wage Payment Law.

102.    The commissions which remained in the profit and loss account were earned and became due and payable at the end of Counterclaimant's termination on November 18, 2024.

103.    None of the funds in the profit and loss account were paid to Counterclaimant after she ceased being employed by Counterclaim Defendant.

104.    None of the commissions that should have been paid to Counterclaimant for loans she originated and closed after she ceased to work for Counterclaim Defendant were paid to Counterclaimant.

105.    Counterclaim Defendant failed to pay the commission of at least $900,000 when it became due and payable; therefore, Counterclaim Defendant failed to pay wages earned by and owed to Counterclaimant.

106.    By failing to pay earned commissions, Counterclaim Defendant has wrongfully withheld Counterclaimant's commissions of at least $900,000 in violation of New Jersey Wage Payment Law.

**WHEREFORE,** Counterclaimant, Mona Lea Edick, respectfully requests that this Court enter judgment against American Neighborhood Mortgage Acceptance Company LLC, d/b/a Anniemac Home Mortgage and award her:

i.   At least $900,000.00 for unpaid commission, penalty fees, liquidated damages of up to 200% of the unpaid wages;

ii.  punitive damages;

iii. attorney's fees and costs of suit; and

iv.  Other relief that the Court deems just and equitable.

## JURY DEMAND

Defendant/Counterclaimant requests a trial by jury for all issues which are triable.

## CERTIFICATION OF ATTORNEY

I certify under penalty of perjury that, except as set forth below, the matter in controversy asserted in the Counterclaim is not the subject of any other action or arbitration proceeding now or contemplated, and that no other parties should be joined in this action. Certain matters between the parties were ordered to arbitration, which has not been initiated, that involves certain underlying facts related to the Counterclaim, however, the arbitration asserts different claims than those in the Second Amended Complaint or Counterclaim.

THE CHILLA BUSINESS COUNSEL, LLC
*Attorneys for Defendant/Counterclaimant,*
*Mona Lee Edick*

/s/ James T. Prusinowski

Date: April 29, 2026                    James T. Prusinowski