

ROBERT HORWITZ
rhorwitz@maddinhauser.com
(D): 248-351-7014
(F): 248-359-6181

One Towne Square | Fifth Floor | Southfield, MI 48076 | Ph: (248) 354-4030 | www.maddinhauser.com

May 21, 2026

**_Via ECF Filing System_**
The Honorable Renee M. Bumb
Chief, United States District Judge
United States District Court for the District of New Jersey
4th & Cooper Streets
Camden, NJ 08101

> **Re:     American Neighborhood Mortgage Acceptance Co. v. Edick, et al.**
> **[Case No. 1:25-cv-01563-RMB-SAK]**

Your Honor:

American Neighborhood Mortgage Acceptance Company, LLC d/b/a AnnieMac Home Mortgage ("**_AnnieMac_**") requests a pre-motion conference related to (1) dismissal of Mona Edick's ("**_Edick_**") Counterclaim under Fed.R.Civ.P. 12(b)(6), and (2) striking Edick's Jury Demand. On April 29, 2026, Edick filed an Answer and Counterclaim asserting: (1) Breach of Arbitration Agreement; (2) Malicious Use of Process; (3) Unjust Enrichment; and (4) Violation of the New Jersey Wage Payment Law. Each count fails to state a claim upon which relief can be granted. Further, Edick also included a Jury Demand requesting a jury trial for all issues which are triable.  Edick waived all rights to jury trial in her contracts with AnnieMac.[1]

Edick's claim for Breach of Arbitration Agreement should be dismissed with prejudice because she has not alleged facts sufficient to establish a material breach and any amendment would be futile. First, Section 1(d) of the Arbitration Agreement requires a stay of non-arbitrable claims if a party pleads both arbitrable and non-arbitrable claims in one suit. In other words, the agreement expressly contemplates that a suit may encompass both arbitrable and non-arbitrable claims and that the other party's remedy is a stay of the non-arbitrable claims. Edick exercised this remedy in response to AnnieMac pleading arbitrable and non-arbitrable claims.

The stay provision aligns with claim preclusion doctrines, including New Jersey's entire controversy doctrine. The entire controversy doctrine mandates that "the adjudication of a legal controversy should occur in one litigation in only one court" and provides that "[n]on-joinder of claims required to be joined…shall result in the preclusion of the omitted claims." _Ricketti v. Barry_, 775 F.3d 611, 613-614 (3d Cir. 2015); _Cogdell v. Hosp. Ctr. at Orange_, 116 N.J. 7, 15-16 (1989); N.J. Ct. R. 4:30A. AnnieMac properly pled its non-arbitrable claim for breach of the Bonus Agreement, and joined arbitrable claims for fraud, fiduciary duty, and conspiracy. Had AnnieMac split any of its claims, it risked preclusion of those omitted claims. And when Edick raised the arbitration defense, the arbitrable claims were promptly referred to arbitration, which AnnieMac did not oppose. AnnieMac's initial complaints in Florida and in this Court were motivated by legitimate claim-preservation concerns, and did not otherwise breach the Arbitration Agreement.

Edick has no plausible claim for Malicious Use of Process. The claim requires proof of favorable termination—"dispositive as to the accused's innocence." *Piper v. Scher*, 221 N.J. Super. 54, 58 (App. Div. 1987); *Rubin v. Nowak*, 248 N.J. Super. 80, 83 (App. Div. 1991). As the Court may take judicial notice of the docket, AnnieMac's arbitrable tort claims did not terminate favorably for Edick, as she incorrectly alleges in Paragraph 77 of the Counterclaim. (ECF Doc. 43). The Court dismissed those claims without prejudice by consent and referred them to arbitration. (Order, ECF No. 34.) The case was administratively closed which the Court explained was "merely a 'docket control device and not an order for dismissal or a decision on the merits.'" Edick concedes this point in the Counterclaim certification attesting that the arbitration "has not been initiated." This fatal flaw in the claim cannot be cured by an amendment.

The Unjust Enrichment claim for compensation is barred because an express written contract governs Edick's compensation. Under New Jersey law, unjust enrichment claims are barred where a valid, unrescinded express contract governs the same subject matter. *Gerresheimer Glass Inc v. Expeditors Int'l of Wash., Inc.*, No. 1:23-2215-RMB-EAP, 2026 WL 1146434, at *7 (D.N.J. Apr. 28, 2026) (Bumb, C.D.J.). Edick's claim seeks compensation in the form of post-termination commissions and profits from the branches she managed. However, AnnieMac and Edick entered into an Originating Regional Manager Agreement dated February 1, 2024 ("Employment Agreement"), and an Originating Regional Manager Compensation Addendum effective February 1, 2024 ("Compensation Addendum", which is Exhibit C to the Employment Agreement). These expressly govern Edick's right to compensation, except for the Sign-On Bonus.

Section 4 of the Employment Agreement, incorporating the Compensation Addendum, identifies Edick's compensation: base salary, commissions for loans she originated, and a production bonus. (Compensation Addendum, § 1(b)). Compensation based on branch profits is *not* part of her compensation. If terminated for cause, Edick had no right to commissions on loans she originated that closed after her last day of work. (Employment Agreement, § 4(c)(i)). Edick further agreed in Section 4(f) of the Employment Agreement, entitled "Sole Compensation", that "[o]ther than as provided in this Section 4, Loan Originator shall not be entitled to any other compensation or benefits." This provision, along with the comprehensive integration clause in Section 6(c) of the Employment Agreement, expressly precludes any purported entitlement to be compensated based on profitability.

Edick cannot use her failure to attach these agreements to her Counterclaim to defeat AnnieMac's 12(b)(6) Motion. The agreements are considered part of the Counterclaim because they are integral to the claims for unpaid compensation. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

The New Jersey Wage Payment Law claim fails because Edick worked in and is domiciled in Florida. The Payment Law applies only to employees working in New Jersey. *Munenzon v. Peters Advisors, LLC*, 553 F. Supp. 3d 187, 200–02 (D.N.J. 2021) (dismissing NJ Wage Payment Law claims by out-of-state employee, holding that "New Jersey's wage and hour laws do not extend to Plaintiff Munenzon, who concededly worked from his home in Connecticut throughout

the duration of his employment"). Edick's pleadings admit that she did not work in New Jersey, but instead managed branches in Florida and Minnesota. (Answer to the Second Amended Complaint, at ¶3; Counterclaim, ¶¶ 1&7). Additionally, the Employment Agreement bars this claim because the parties agreed that Florida law, not any New Jersey statute, would govern the employment relationship and compensation. (Employment Agreement, § 6(n)).

Finally, Edick's is not entitled to a jury trial on AnnieMac's claims or her claims. Her demand for a jury should be stricken because both the Bonus Agreement and the Arbitration Agreement contain express jury trial waivers. (Bonus Agreement, § 10; Arbitration Agreement, § 1(c)). The Arbitration Agreement waives all "respective rights to trial by jury of any claim each may have against the other that may arise out of or relate to Employee's application for employment or employment with Company, including separation from employment." Because each Counterclaim arises out of or relates to Edick's employment with AnnieMac, this waives a jury trial for all of Edick's and AnnieMac's claims. Jury trial waivers are enforceable if knowing and voluntary. *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3rd Cir. 2007).

For the foregoing reasons, AnnieMac respectfully requests a pre-motion conference to discuss filing (1) a motion to dismiss Edick's Counterclaim pursuant to Rule 12(b)(6), and (2) a motion to strike Edick's Jury Demand.

Very truly yours,
Maddin, Hauser, Roth & Heller, P.C.

*/s/ Robert Horwitz*

COLE SCHOTZ P.C.

*/s/ Connor M. Mannion*

cc:    James T. Prusinowski and Connor M. Mannion (via ECF)

_____

1. There are three pertinent agreements: (1) Originating Regional Manager Agreement dated February 1, 2024 ("Employment Agreement"); (2) Arbitration Agreement; and (3) Sign-On Bonus Agreement ("Bonus Agreement").