

**James T. Prusinowski**
*Partner*
jprusinowski@chillalegal.com
268 South Street
Morristown, NJ 07960
P: 973.660.1095 x170

May 29, 2026

**VIA ECF**
The Honorable Renee M. Bumb U.S.D.J
Chief, United States District Judge
United States District Court for the District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

        **Re: AnnieMac v. Edick et al**
        **Case No. 1:25-cv-01563-RMB-SAK**
        **CBC File No. 25-022**

Dear Judge Bumb:

Please accept this letter in response to Plaintiff's/Counterclaim Defendant's letter requesting a pre-motion conference requesting permission to file a motion to dismiss Edick's Counterclaims and striking her Jury Demand. Defendant opposes Plaintiff's request.

## A. Breach of Contract

AnnieMac's contention that Edick failed to allege a material breach of the Arbitration Agreement lacks merit. Section 1(d) of the Arbitration Agreement expressly provides that certain disputes "will proceed as a severed, separate, and split case from arbitrable claims wherever necessary to ensure enforcement of this Agreement" and further requires any non-arbitrable claims to be stayed pending resolution of arbitrable claims through arbitration.

This stay provision, however, does not permit either party the right to file arbitrable claims in court from the outset. To the contrary, the Arbitration Agreement clearly provides that the parties agree to use binding arbitration as the means "to resolve all disputes that may arise out of or relate to employee's application for employment or employment with company, including separation from employment" and that "arbitration is the exclusive remedy for all disputes, except as stated herein." Despite that clear language, AnnieMac commenced this action in court asserting claims for fraud, breach of fiduciary duty, and conspiracy, all of which fall within the scope of the arbitration provision. That conduct constitutes the breach alleged in Edick's counterclaim.

AnnieMac's reliance on New Jersey's entire controversy doctrine is similarly unavailing. Contractual arbitration provisions remain enforceable notwithstanding that doctrine, particularly

www.ChillaLegal.com

576 Fifth Ave Suite 903
New York, NY 10036
P: 212.226.6550

1700 Market Street Suite 1005
Philadelphia, PA 19103
P: 844.782.2179

The Honorable Renee M. Bumb U.S.D.J
May 29, 2026
Page 2 of 4

where, as here, the Arbitration Agreement itself addresses how mixed claims are to proceed. Rather than follow the procedure outlined in section 1(d) of the Arbitration Agreement, AnnieMac elected to litigate arbitrable claims in court and only sought to refer those claims to arbitration after Edick raised the issue.

Further, AnnieMac's assertion that the tort claims pursued in Florida were filed merely to preserve claims is unpersuasive, particularly because Florida does not impose a mandatory joinder requirement. As such, AnnieMac had no obligation to reserve those claims when it filed its initial complaint in Florida. Moreover, AnnieMac elected to assert tort claims in the Florida action despite those claims being expressly reserved for arbitration. Accordingly, AnnieMac's attempt to characterize its conduct otherwise is categorically unsupported by the record.

Edick's counterclaim properly alleges that this conduct breached the parties' Agreement.

### B. Malicious Use of Process

The Court's dismissal without prejudice and referral to arbitration constitutes a favorable termination for purposes of establishing that the judicial process was improperly invoked. The relief sought by Edick was the removal of claims from the court system and enforcement of the parties' Arbitration Agreement, which is precisely what occurred. Moreover, AnnieMac's Second Amended Complaint confirms that result, as it has since withdrawn the tort claims and now proceeds solely on the alleged breach of the bonus agreement.

Indeed, even the authority AnnieMac relies upon recognizes that a malicious use of process claim may proceed where a party independently withdraws claims that were improperly asserted. As the Appellate Division explained in Piper v. Scher, where a plaintiff "independently and unilaterally withdraws a prosecution otherwise maliciously filed without probable cause," a malicious prosecution claim may be sustained upon a showing of special grievance. Piper v. Scher, 221 N.J. Super. 54, 59 (App. Div. 1987)

Further, Edick's malicious use of process claim is not confined solely to the arbitrable tort claims. Rather, it concerns AnnieMac's broader litigation conduct, including filing suit in Florida, refiling in New Jersey, and asserting claims that Annie Mac knew, or should have known, were subject to arbitration under the parties' Arbitration Agreement. Any concern regarding claim preclusion was entirely of AnnieMac's own making. AnnieMac could have pursued its non-arbitrable contract claim in court while simultaneously arbitrating the tort claims in accordance with the framework set forth in the Arbitration Agreement.

Accordingly, AnnieMac's contention that Edick cannot establish favorable termination misstates both the procedural history and the applicable legal standard.

The Honorable Renee M. Bumb U.S.D.J
May 29, 2026
Page 3 of 4

### C. Unjust Enrichment

Edick has articulated a legitimate claim for unjust enrichment that should not be dismissed at the pleading stage.

AnnieMac's reliance on Gerresheimer Glass v. Expeditors Int'l of Wash. is misplaced. In that matter, the court addressed the unjust enrichment claim at the summary judgment stage and concluded that the claim was duplicative of the breach of contract claim because both arose from the same brokerage services and related fees. Gerresheimer Glass v. Expeditors Int'l of Wash., 2026 U.S. Dist. LEXIS 93011, at *19 (D.N.J. Apr. 28, 2026). The procedural posture here is materially different. AnnieMac seeks dismissal at the pleading stage, where the Court must apply a substantially different and more lenient standard.

Moreover, Edick's unjust enrichment counterclaim is not duplicative of the breach of contract counterclaim. Count One is premised on Counterclaim Defendant's breach of the Arbitration Agreement, which is separate and distinct from both the Employment Agreement and the Sign-On Bonus Agreement. Indeed, the Sign-On Bonus Agreement itself recognizes that it governs only the bonus payment and states that it shall control in the event of conflicts with other agreements "unless the conflicting agreement expressly states it controls with regard to the terms at issue." This suggests the parties contemplated multiple agreements governing different aspects of compensation.

AnnieMac was unjustly enriched by seeking repayment of the $500,000 sign-on bonus despite financial records demonstrating otherwise. At the start of Edick's employment, her profit and loss report reflected a negative $500,000 balance tied to her signing bonus. Through the business she generated, that balance became positive by September 2024, and at the time of her termination, the report reflected at least $400,000 in profit. With respect to the additional compensation, the Employment Agreement provides that commissions are payable "for which Loan Originator was the loan officer of record on Loan Originator's last day of employment, that closes and funds and otherwise meets the definition of an Eligible Loan" unless the loan originator was terminated for just cause.

AnnieMac's pending arbitration claims directly concern whether Edick was improperly terminated "for cause" because it relates to the tort allegations relating to the termination have any merit. Although those issues are to be resolved in arbitration, they are inextricably intertwined with AnnieMac's remaining claim under the Sign-On Bonus Agreement asserted in the Second Amended Complaint. Under these circumstances, Edick is required to assert the counterclaim to preserve her rights and avoid waiver.

### D. New Jersey Wage Payment Law

The Employment Agreement identifies AnnieMac's principal place of business as Mount Laurel, New Jersey, and Edick was employed by a New Jersey-based company. The fact that she managed branches in Florida and Minnesota does not necessarily preclude application of New Jersey wage law, particularly where her employer is headquartered in New Jersey.

The Honorable Renee M. Bumb U.S.D.J
May 29, 2026
Page 4 of 4

Nonetheless, if it is determined that Edick's employment is governed by Florida law, in light of Section 6(n) of the Employment Agreement, Edick is prepared to amend the counterclaim to assert claims for unpaid commissions and compensation under Florida law. The amendment would not change the factual allegations underlying the claim, namely AnnieMac's failure to pay commissions earned by Edick, but would instead conform the claim to the governing legal framework contemplated by the parties' agreement. Under these circumstances, any issue concerning the present statutory designation is properly addressed through amendment rather than dismissal with prejudice.

### E. Jury Trial

The Arbitration Agreement's jury waiver applies to claims "that may arise out of or relate to Employee's application for employment or employment with Company, including separation from employment." However, Edick's counterclaims arise from AnnieMac's breach of the Arbitration Agreement itself and its misuse of the court process. These are not employment-related claims covered by the waiver. Edick has a right to a jury to resolve these issues.

For these reasons, AnnieMac's request for leave to file a motion to dismiss should be denied.

We thank Your Honor for her kind attention to this matter.

Sincerely,
**THE CHILLA BUSINESS COUNSEL, LLC**
s/ *James Prusinowski*
James T. Prusinowski